The Honorable, the Judges, the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons have any manner or form of business before the Honorable. The United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this afternoon. We have an interesting case, good lawyers, American Federation of Teachers v. Scott Bessent. Mr. Starcher for the government. Can we shorthand it and call it the government? Sure. Good to have you with us, Mr. Starcher. Thank you. Good to be here, Your Honors. Your Honors, and may it please the Court, Jack Starcher on behalf of the United States. The District Court here committed numerous errors in issuing a disruptive injunction that second guesses and micromanages internal agency decisions about what access agency employees need to do their jobs. Most glaringly, perhaps, the District Court's decision repeatedly strikes out on its own and on new ground without any precedent on standing on final agency action and on what is required to satisfy the Privacy Act's exception. Particularly given that plaintiffs bore the burden below to establish a clear entitlement to the extraordinary relief that they sought and obtained, those multiple independent fatal errors provide ample basis on any one of them to warrant reversal and vacater of the District Court's injunction here. I'm happy to start with standing as we think that perhaps is the most straightforward basis to vacate the District Court's decision. The District Court's decision simply cannot be... The plaintiffs here say that the District Court agreed that under the decision in Gary that that's sufficient to establish standing here. That's right, Your Honors. I think that can't be squared with Gary or with subsequent for that matter. I think as this panel pointed out in its stay decision, it's difficult to understand how the fact that in Gary the plaintiffs there had clearly alleged that their information was not just looked at but then used to send mailings to the plaintiffs there and that fact was clearly important to the Court's decision in Gary. You see that both through the nearly identical to, that's the Court's words, the question presented in Krakauer. The District Court distinguished a couple of subsets of plaintiffs in Gary, one of which did not or I guess they disclaimed a use component for standing and it was simply the access for that particular group. So that's right. I mean that's certainly what the District Court said. This Court in Gary in the context of explaining why none of the plaintiffs in Gary had established standing for forward-looking injunctive relief, the Court discussed this, but in the portion of Gary where it did find standing and that was on the sort of retroactive damages, it made very clear I think that it was relying on the allegations and to be clear both plaintiffs in Gary, sets of plaintiffs in Gary, whatever sort of theories of recovery they disclaimed for forward-looking or prospective relief, both plaintiffs, sets of plaintiffs, clearly alleged that they had received these mailings. That was part of the complaint. If you at the second amended complaint in Gary, which is the paragraph that's quoted in the decision where it's discussing sort of intrusion upon seclusion, if you look at that paragraph in full, that's what paragraph 127, that paragraph says very clearly that each plaintiff owner in that case sustained actual damages by having his or her privacy invaded, by having their names and other information accessed, and used, and this is a direct quote, and used for marketing purposes without his or her consent. So the very paragraph that Gary cites from the amended complaint there makes clear that those plaintiffs certainly did allege use in addition to mere access. And again, I think as this point, this Court pointed out, the Court's reference to Krakauer doesn't make any sense unless that was front of mind for the Court in its analogy to intrusion upon seclusion. The Court's comment that the core of intrusion upon seclusion reflects an individual's right, quote, to be left alone. That reference doesn't make any sense unless there was something done by the defendants in Gary to intrude upon that right to be left alone. And then again, I think even if Gary was somehow unclear on this, which I don't think it really is, but if it were, I think the Court's subsequent decision in O'Leary while confronting, you know, somewhat different facts, I think the Court's observation there that the core of intrusion upon seclusion... Well, the judge first relied on transunion, I think. She did the spring court case. That intangible harms can be concrete, correct? Correct. They include injuries such as reputational harms, disclosure of private information, and intrusion upon seclusion. That's certainly correct, and the government isn't contesting that intrusion upon seclusion could... That's in the Supreme Court of the United States. Yep, I certainly agree with that. Private information. What are we talking about here? A lot of private information, my friend. So the Supreme Court... Stacks on stacks of private information. Right, and so the Supreme Court in transunion referenced a number of different, as you noted in that list, the final of that list is intrusion upon seclusion. There are other common law analogs that the Court sort of averted. When did this intrusion start? On January 20th. I think it, you can, you know, the administrative record shows that I think these individuals were sort of joined these agencies and became employed on something of a rolling basis, but that's right, it started on January 20th with... January 20th, January 24th, there's one... With the executive order. Of the agencies, there's an agreement or something, January 24th, and it was ongoing until February the 24th. I believe that's right, I mean, I think it's a little... Because of the TRO. Right, and there was, so for one of the three agencies, Treasury, right, there was... There's one ongoing until the TRO on February 24th, and then the TRO was replaced by the So there was access to all the information between January the 20th and February 24th, and it was... Did the TRO and the preliminary injunction cease the access? I mean, these plaintiffs, about two million of them, but there are many, many more millions who have records within these agencies, correct? That's right, and just to answer your question... How many more million? Over and above that are represented by these plaintiffs? I don't know the answer to that, and I think, you know, I believe there hasn't been a question... You don't know the answer to that? I don't know the total. What you had access after the TRO and during the TRO and the preliminary junction was access to the non-representative plaintiffs or non-representative individuals terminated or with the access continued? No, so, you know, the injunction ran and the TRO, I think, also... But the injunction didn't cover everybody. That's what I'm getting at. It covered the DOJ team members who had been identified. How do you pronounce that? DOJ? That's how I pronounce... Department of Government Efficiency, you can use the... Pardon? Department of Government Efficiency, I think, is the... Okay, but I've been figuring out how to pronounce it. I'm from West Virginia, and I think where I'm... The part that I'm... of West Virginia I'm from, we would call it dog or doggy or something. But DOJ, I've heard on television. Yeah, that's how I've been pronouncing it, but I'm not the expert in the pronunciation. We'll go by your term, but DOJ had access as to everybody except the ones covered by these labor unions, represented by these labor unions, and these six veterans, ever since January 20th. It's never stopped. No, no, that's just to be clear. Sorry for misunderstanding the question. So first, one point of clarification, Treasury, obviously, was not covered by the TRO because the Treasury DOJ team was covered by a separate, and still is, by a separate preliminary injunction out of SDNY that predated, I think, predated the TRO here, I'm pretty sure. And then once the TRO issued, the government complied with it. The terms of the TRO, pretty clearly, I don't have the text in front of me, but the TRO and the PI both ran not against information of the individuals in these entities, but against the DOJ team members and their ability to access these databases as a whole. And I don't know, given that some of the plaintiffs are sort of multi, many, many multi-member organizations, I don't know it would have been feasible to sort of pair off just records belonging to people who are members of those entities. So this really was quite disruptive, and these team members who- So they didn't have access to many more than what those represented by these plaintiffs? That's right, that's my- But you don't know which ones they had access to, which one they didn't? Well, it was none. It was, again, and I don't have the text in front of me, but- But they had access from January 20th to February 24th. That's right, except for the asterisk that the Treasury people were covered by a different PI that issued- And they've had, and then there was a, the stay was entered on April the 7th. That'd be four weeks ago. So they've had access for over two months. So, adding together, I see, the- Added, yeah. Yeah, and again- And they were, at the beginning, there's a document in your administrative record that says all they needed to access for was four to six weeks. I don't know about that. I mean, and again- You don't know about that? I can look at the JA page if you have it, but I think just to take a step back here, the injunction runs against these individuals. The injunction has prevented all of these individuals who were directed to do a very specific job by an executive order, by a direct, clear pronouncement of the president. They have all been prevented from accessing these systems while the TRO or the PI were in effect. That's very disruptive, and I think that disruption more than calls into question the district court's sort of final balancing of the equities at the back end of the preliminary injunction analysis, but those balancing of the harms only comes into play once the plaintiffs have shown a clear entitlement to the relief they sought, and again, there are numerous independently fatal problems with- Do you take the standing question to be part of Winter's first prong, the sort of likelihood of success? Because you could imagine standing to be a threshold question, if it doesn't exist, there's no winter to be done. If that was sort of a ruling, there was no standing, or it could be done as part of winter factor one, sort of a likelihood of establishing standing. Do you think both of those permissible ways of doing it? I think so. I guess I'll say that I usually think of standing as part of the winter likelihood of success inquiry, sort of mirroring the fact that the showing of standing has to sort of, as the case progresses through, match up with motion to dismiss, summary judgment. I sort of think of preliminary injunctive relief as the same way, but again, preliminary injunctions are unique. It's the plaintiffs who bear a burden of showing a clear establishment, so even if there are- But preliminary injunctions are reviewed for abuse of discretion. That's true, although legal errors are always abuses of discretion. Legal errors are always enough, but the overall review, standard of review, applicable to our review of a preliminary injunction is abuse of discretion. That's correct. By the district court. We defer to the district court in awarding a TRO, awarding a preliminary injunction in particular. That's certainly correct, and as explained, well, I think a real red flag here in this case on the district court's analysis of three different independently fatal problems with plaintiffs' theory, we've already talked about standing, the government's position, and I think we've explained why, is that there is no case that has ever found standing in this intrusion upon seclusion analog. I think the Eighth Circuit's decision in Equifax, which we cite in our reply brief, I think is helpful to explain some of the many axes upon which this theory of intrusion upon seclusion that plaintiffs put forward is nothing like- Well, the judge recited the restatement second on that tort, and it seemed to me that it fit like a glove. I disagree. I know you disagree, but I just want to say that. Yeah, I think none of- But Judge Boardman wrote that in her opinion. That's true. She was god about it. The district court certainly cited the restatement. I think the district court took the wrong lessons from the restatement. I think if you look at really everything of the restatement, the way it frames what the traditional injury requires, the exemplars it gives, as we pointed out in our reply brief, if you drop down to the notes of the exemplars, one of the notes makes very clear that internal review of documents that an entity was allowed to have access to, in the sense of, I don't think anyone is arguing that the treasury or OPM or education unlawfully retained or has these records, that the restatement indicates that that's not shocking, that's not surprising, that's not the sort of eyebrow-raising or highly offensive conduct that is the sort of lodestar of an intrusion upon seclusion. I just also- I see my time's about up, so I won't say too much more than that, but I appreciate your questions. Thank you. Thank you, Mr. Starcher. Mr. Schwab? Good to have you with us, Mr. Schwab. Thank you, Your Honor, and good afternoon, Your Honors. May it please the Court, John Schwab, on behalf of Plaintiffs' Appellees. Defendants' position here is very simple. It's that neither my clients, nearly two and a half million veterans, health care workers, government employees, and teachers, nor any other American citizen has any ability to stop the government from sharing their most sensitive information with the public. Within the government, no matter how illegal that sharing may be. Defendants take that position despite the fact that in 1974, Congress passed the Privacy Act specifically to guard against- I thought their position was that they did have authority to access the information. I'm sorry, Your Honor? I thought the government's position was that they did have authority to access the information. That is the government's position, Your Honor. But their argument is that we don't have standing. But that would contradict what you just said. Well, no, Your Honor. I'm referring to their standing argument, and at standing, this Court assumes that my clients prevail on the merits, and what the government is saying is that even if we were to prevail, we can't show an injury from this harm, and therefore, we can't bring this case home. Do you take the government to argue that you can't bring a Privacy Act claim for damages? No, Your Honor. This is not a damages case. Right. It's not that your clients can't do anything, that they can't seek relief, but they have to seek relief, if at all, through the means that Congress has provided. That is correct. I don't think the government has argued otherwise, Your Honor. Can I ask- I'm just trying to understand the sort of intrusion seclusion idea a little bit, and sort of understand where you think the lines are. Imagine for a minute that I go to the post office, and I steal a bag of mail, or let me make it my law clerk steals it, because I don't want to steal stuff. But he steals the bag of mail, and takes it to his house, and puts them all over the table, but he doesn't open any of the letters. Do you think that states an injury for this purposes? I'm not talking about whether he can actually recover, right? But is that an injury under intrusion seclusion, from your perspective? So I think, Your Honor, I think it would be an intrusion upon seclusion. You're assuming that my- let's say it's me, my mail is in there. Yours, and everybody else in this courtroom, and let's just claim two and a half million other people. It's a big bag. So I don't think that there is an intrusion upon seclusion. I don't think there's a privacy interest when I put a piece of mail in a mailbox. However- And what- just help me understand. So in that instance, I take you to be saying there's no intrusion into- even though he has the piece of mail, and it's sitting on his table, it's closed. You agree that's not the type of injury that would qualify under transunion for intrusion and seclusion? I don't think transunion actually addresses intrusion upon seclusion. But it's asking about the nature of the injury. I'm trying to get away from the cause of action. Could he recover in state court? I don't- that doesn't bother me. What I'm trying to ask, is it the type of injury that would satisfy transunion's analogy test? I don't think so, Your Honor, because again, I don't- I think that when you are simply placing a piece of mail into that- into your post office box outside your house, I don't think you have the expectation of privacy. Now, if he had taken it from my P.O. box, I would say yes. But that's true even though he now has unfettered access to your mail, right? So he has unfettered access. You've written a love letter to your wife, and he has that unfettered access to it. It's sitting on his table. He's chosen not to open it and read it, but that wouldn't be the type of injury. What happens if he does open it? So imagine he takes it from the post office, same bag of mail, brings your letter out, sort of at random, puts it on the table, opens it up, and reads it. Yeah, I think if the- if what's inside of that is private information, let's say it's my private financial information or a letter to my lawyer about some issue, then yes, he's invaded my privacy when he has done that. And that's the type of injury that would qualify? I think that is a type of injury that would qualify. What happens if you're like sophisticated in discussing things with your spouse, and you write it in code? You use like cryptography, right? And so you've written the letter, and it's very private details, but you've written it in cryptographic means. Same other hypothetical applies. Is that the type of injury? No, I don't think so. And in fact, Your Honor, what I would say is here, there's record evidence. That's not the type of injury? Before you go to the record, I'm happy for you to talk about the record, but this is hypothetical. I'm not trying to- this isn't the record, right? Obviously, there are no letters. There's no cryptographic code that I'm aware of. But tell me why you think that is not- that would not be intrusion? He has opened your private mail. He has pulled out the letter to your wife. He's not able to understand it. But in your view, that would not be intrusion? That would not be an injury sufficient to bring an intrusion upon seclusion claim? I'm taking the assumption to be that that is some kind of cryptography that is not breakable by him or anybody else. It's just between me and my wife. And so what I'm saying is no, he has no access to my personal information there? Even though he's opened your mail? So your view is that this claim is solely about the information. It's not about the intrusion at all? Well, it is about the intrusion because it's the intrusion where that information results. What about if instead, and I'll stop with hypotheticals in a minute, but what about if instead, after you write the letter to your wife and it's not in code, it's just a letter to your wife, and my law clerk finds it in the trash or in a cafe, and he opens it up, it's not sealed, it's just the letter itself. He reads the letter and it includes all the information from before. Is that the type of injury that would qualify? I don't know what my privacy expectation would be in that instance because I threw the letter away. So I would say no. No, you have no, so no injury there. All right. And that's true in your mind, whether it's in the garbage or if it's just left sitting on the cafe table. Again, I don't know what, like, where I just say, like, I've read the letter, I'm done with it, and I leave it on the cafe table. It's the same thing. It's not about the garbage. Okay. And that, and tell me why you think that's no injury? I understand you may not recover, right? So that's a different question as to you could recover under the tort. But why is that not an injury in the same way? Because you just suggested in the previous hypothetical, I'm just trying to understand your lines here. In the previous hypothetical, you said it's just about the information, right? Because it was in code, that doesn't count. But here, he's got all the information. He's read everything that you've said. Right. So the line that I'm drawing here, Your Honor, is a simple expectation of privacy line. So I've taken something, I've bundled it up, I've sent it to my wife, I haven't expected anyone else to see it. If I read something, and I leave it on the table, and I walk away. So your wife has abandoned, in other words, what you're saying, because your wife has abandoned it. Or I have, yeah. Or whoever. I misunderstood the hypothetical. Right. Somebody, somebody abandons it. Makes no difference from my perspective, I don't think. But it's been abandoned. In that context, you think there's no injury to you? I don't think there's an expectation of privacy, so there is no privacy harm. All right. Let me make one variation on Judge Richardson's hypothetical. So you've written the letter, his law clerk has stolen it, but you've written the letter in German, and the law clerk doesn't speak German, can't read German, has no idea what it says. Is that an intrusion upon seclusion at that point? I would argue that that is, Your Honor, although I think that's a very close call, and I'll tell you why I'm drawing a difference between that and the cryptography example. The cryptography example I understood to be one in which it couldn't be broken. So you've got something, but there's like a lock on the words. Whereas this, and I apologize to Judge Richardson, but still my apologies, he could easily turn perhaps to another one of the clerks who does speak German and have that translated. The information is easily accessible, just he has to take one additional step. So I'd like to turn to where the government started as well, which is the Gary case. And I understood Mr. Starcher to be arguing that, to be conceding, first of all, that the Gary plaintiffs, there were two plaintiffs, Gary and Hatch, that the Gary plaintiffs had amended their complaint so that they were not proceeding on a claim of use when they came before the Fourth Circuit. And that's correct. In fact, what this court says in Gary is that having abandoned that theory of liability, they cannot then use that to justify standing. That is in the opinion, and we therefore think that those Gary plaintiffs, not the Hatch plaintiffs, they, this court found Article III standing for them based solely on the defendants there obtaining their information, which in that case was their home addresses. Now. Well, that's partially correct. They did obtain the information, but it was information, and the rationale there was that it was information obtained for an impermissible purpose in violation of law. So even if we were to accept that view of standing, if the government prevails on its, for instance, need to know in order to perform the functions of their job aspect under the Privacy Act, would that then counteract a finding of standing? Because they've obtained it for a permissible purpose, theoretically. Well, so Your Honor, yes. I think that the answer is yes, that if we conceded here, which we do not, that they obtained it for a permissible purpose, then that would not fit under Gary. But that is not what we have alleged. And again, this court assumes that we're going to prevail on the merits simply for analyzing standing. And if we're going to prevail, they won't show that they had a need to know or that a routine use applied, and our clients would then be injured by the mere obtaining of the information exactly as in Gary. But that seems to read out part of the specific finding in Gary. I don't agree with that, Your Honor. I think that... Because it's all in one line, followed by the phrase obtained for an impermissible purpose. So there wasn't a segregation between simply obtaining it and obtaining it for an impermissible purpose. But the line is, the quote from the Gary complaint, is that they had alleged that it was obtained for an impermissible purpose. My clients have alleged the exact same thing. What was the impermissible purpose in Gary? The impermissible purpose in Gary was to use the home address... Marketing. ...for unsolicited mailing. Right. Marketing. I believe so, Your Honor, or that kind of outreach. Right. But that's the point of Gary, right? It's the marketing that's the intrusion. It's not the information itself. I disagree that that's the point of Gary, Your Honor. And in fact, Krakauer says that what we are to look to, what this court is to look to, is whether or not the statutory violation protects the same types of harms, the same types of harms as a common law court. And what the issue in Gary is, is for those plaintiffs, is obtaining. They didn't allege. They didn't seek. They didn't say they were harmed by use. They said they were harmed by the obtaining. And this court found enough there to make a concrete injury sufficient for Article III standing. And the same has to follow here. So just to be clear, is it your view on standing that obtaining the material, even for a permissible purpose, is sufficient to grant a plaintiff standing? Obtaining a material for a... I mean, that seems to be what you're arguing, but I'm a little confused here. Okay. So I'm not arguing that. What I am arguing is obtaining material... What I am arguing is that the unauthorized obtaining of anyone's personal private information, which they have a legitimate privacy interest, is sufficiently analogous to the tort of an intrusion upon seclusion to satisfy Article III. That is what I am saying. But if there was a permissible purpose, then there could not be a tort of intrusion upon seclusion. But not in this fact pattern, no. Okay. Can I ask you a question? I hate to distract you a little bit, but I hate it enough not to do it. With the Privacy Act, so moving to that claim, right, the sort of issues like do they have a need for the record and the performance of their duties? Do you read the Privacy Act in any way to limit the scope of the duties of a government employee? No, Your Honor, I don't. Okay. And so what I'm trying to understand a little bit is whether the breadth of the duties informs the need. Just in the abstract, I'm not talking about this case in particular, but you could imagine the scenario that is a narrow duty and that would make it difficult and require great specificity to show the need for that very specific duty. And in the other hand, you could envision a broad duty or mandate that is open-ended and thus requires less specificity. Okay. I'm not sure that I have a view as to whether either one would necessarily impact the Privacy Act, because I think what it would impact is the analysis, Your Honor, of the question the Privacy Act asks on the need-to-know basis, which is does the employee need that particular piece of information? And how does it affect, in your view, how does it affect the analysis? You said it affects the analysis. Yes. In what way? Because, Your Honor, a broader duty might require a different showing to show why this employee or set of employees needed that information in order to perform that particular function, whereas a very narrow one might require some different showing. So what, in your view here, should the government have been required to show to meet the need-to-know requirement? I think the government was required to show why each individual to whom it was granted access under this policy to grant access to all DOJ affiliates needed access to my client's PII in every single one of these databases, because, again, they were granted access to every single database. So did they need to, in your view, did the government need to give the district court the algorithms that they proposed to use to carry out their searches or what? I'm having difficulty understanding the degree in which a trial court or our court is permitted to get into the weeds of these sorts of things beyond what the government represented here. So maybe you can help with that. Sure. So I think, obviously, it would depend on a case-by-case basis the exact specifics. But here, what the trial court found correctly is that there is no basis at all in the record for a need-to-know. And, quite frankly, in none of the briefs the government has set forward have they set forward a cogent explanation for why each of these individuals needed to know my client's personally identifying information in order to modernize technology. They haven't even attempted it. So imagine for a minute that I read, or let me give it a hypothetical, so we'll stay away from the particulars. So imagine that I issue a mandate to the local library, and I tell them that I want them to hire my law clerk to come in, and I want him to modernize and improve the efficiency of the local library. But I don't tell them in what way or how to do that. It strikes me as the natural read of that is that there's a host of things that he might do, but he doesn't know what he needs to do until he gets there. It might be that they're not using the Dewey Decimal System. It might be that they don't have enough stacks on the board. It might be that their staffing is a problem. It might be they're not using enough online services. But until he gets in the library, it's really difficult to know what he needs to do to help improve the local library. And so this broad mandate to improve the library includes the preliminary step of determining what needs improving, what the limitations are. And so I guess I'm having a little trouble understanding in that hypothetical where it might be staffing, it might be online services, it might be the organizational system or the Dewey Decimal System. How an employee is supposed to do that? How am I, law clerk, supposed to do that if he's told on the front end he can't go in the library? Like you can't look at the books. You can't determine the staffing. You can't ask what the online services are. How is he supposed to then determine what it is that needs to be updated, modernized, and improved? I'm not sure, Your Honor, honestly, that that hypothetical maps at all onto this. Totally understand, but answer the hypothetical first, right? So how is he supposed to know in my hypothetical? It's a hypothetical. The nature of a hypothetical is it might not match the facts. I understand that and I'm happy for you to explain why you think the library is different. But in my hypothetical, how is my law clerk supposed to know on the front end whether he needs access to the staffing or he needs access to the subscribers or users of the library until he has some idea of what the problems are? And to know what the problems are, he has to be able to go in the library. He has to go look at the books. He has to talk to the staff. I understand, Your Honor. What I would say is I think it depends. So if there was a duly enacted piece of legislation by Congress that said you can't look at the books when you go in there, then he couldn't look at the books and he would have to figure out a different way to do that. Okay, and what I'm asking is... So what's the irreparable harm here? Okay, I'm sorry? Can I finish with this question first? Go ahead. I apologize. So what is... Back to my hypothetical. I understand you want to go to a different hypothetical, right? But what I'm asking is how is my law clerk supposed to know what he's supposed to do in the library to improve it, to make it better for all the patrons if he can't go in the library, right? In other words, he needs access to the library and the staffing in order to determine what needs to be done, right? How is he supposed to know how to improve the library without access to the library? Well, that's what I'm asking. Sure, one thing he could do is he could ask the librarian what issues should I look at and what issues may I or may not I not look at and the librarian could tell him. Because he's being sent in to a library that's fundamentally broken. That's the problem he's got. And so asking the person who's running the library that's broken how to fix it is it naturally the best way to resolve it, right? Like we don't typically say this restaurant's failing, right? It's in bankruptcy. You know what we should do? We should ask the bartender how to run it, right? No, like we bring people in to evaluate it, not to take the word of the people that have run it into the ground, right? So I'm back to my question of how is he supposed to do it without access to the library. So, your honor, in your hypothetical in which no law prevents him from doing that, he can't trust anyone there, he can't ask anyone, he can get no other information, he does need to walk into the that's different here. Just so I understand your argument, why you think this is not the scenario where my law clerk is walking into a system that, at least according to our elected officials, is fundamentally broken and needs to be modernized and improved. And he needs to know what needs to be done. Yes, your honor, I did note that I was past time. I just want to make sure I'm okay doing that. As long as you get questions, you answer. Okay, I was just warned about the red light. Okay, thank you, your honor. So the difference in my view here is the Privacy Act. Because Congress passed the Privacy Act, it's very clear what their concern was. And the concern was, to bring it into the library, you can't come in and look at these books unless each author says, you have my permission, unless an exception applies. That's the rule. And one of the exceptions is what? You need to know. And you just said my law clerk needs to know those things in the library. Correct. And why does he not need to know it when he's going in to try to figure out a fundamentally broken government agency? Because to look inside the book, to read each and every book, he has to justify why. He needs to read the book to figure out why the library's not working. And that's what's happening here. They're looking at our client's personally identifiable information without any basis, without any need to know. And in fact, the, in OPM, they admitted that they gave them access to databases that they didn't need to. They just gave, they opened up every filing cabinet, the whole library, and said you can look. You say they look without any need to know, what they have to know something to look. They have no name or have a social security number or something to look. If they want to look at my record, do they need to know my name? If they want to look at your record, they need to know some way to look at your record. How will they find me? I think maybe Judge Richardson described one row of various databases that are millions and millions of rows long. But to find a particular person, that, do they need to know a name? They need to know a social security number, a military serial number? So two different answers to that, Your Honor. If they're going in simply looking at the data, right, and they see Judge King, they will see your name. Without a need to know, they're looking. That's what you're saying. Right. They want to look at Judge King. All right. What do they have to do? Just put in Judge King and look? Well, if they want to look at you, yes. But they also could simply open up the database and say, oh, that's interesting. Here's Judge King's financial information. What can they look for Judge King? They find everything about me? Well, if you're in the life of the, what do they have? They could find out your social, if you're in all of the databases, your social security information, your financial information, your family's financial information. That's what I want you to get after. And social security numbers? Social security numbers. Serial numbers in the military? Serial numbers in the military. Your pay, your financial information. Bank records? Your bank records. There's health and medical records. There's mental health records for the veterans and so on and so forth. And you've got veterans that are plaintiffs with you. I'm sorry? You've got some veterans that are plaintiffs with you. Yeah, we have named veterans. But they can find about every veteran? Yes. Medical records? Yes. And they do that without a need to know is what you're alleging? That is the harm that we on going. Right, you're saying it's ongoing. And the preliminary injunction has been stayed and they're looking now. That is correct. At anybody's records is what you're saying? That is what I am saying. And as a result of that, whatever happens here today, what, it doesn't end this lawsuit? No, Your Honor. You haven't finished discovery yet or haven't done any discovery yet? We have not, Your Honor. Then there's a permanent injunction issue. And there's a related case now in the pending in the Supreme Court. Yes, Your Honor. On a motion or an application for a stay pending appeal. And you, do you, I'm asking whether you agree that that could have an impact on what happens here? You mean if the Supreme Court were to take that application? Whatever they do. Yes, I think it should happen. I think it would. I think the cases are very closely related, as Judge Richardson said in his dissent in that case. Judge Richardson said it's a twin. And I don't agree with him that it's completely a twin. That twin may be related, may be a brother or something. I just said related, Your Honor. But closely related, I think is fair. But that could have an impact on this proceeding? Yes, Your Honor. These proceedings, I will say. Yes, Your Honor. I think they could. Now and hereafter? Yes, Your Honor. Can I just ask one procedural question that didn't occur to me until Judge King started asking? I know I could look at the docket, but I get to ask you instead. Where are we in the permanent injunction proceeding? Has that proceeding begun? Is discovery ongoing? Is that being held pending this matter? Can you just update me from a procedural perspective? The case has been stayed. There is no discovery. Has it been formally stayed or is this like a pocket stay? I'm not sure, Your Honor. I don't know the answer. I think there's an agreement that nothing's going to happen until 30 days after this appeal is resolved. We had a stipulation about the stipulation or something. There's something in the record that I read that refers to 30 days later. We did stipulate that. I didn't know that the court, I couldn't recall the court. That was a stipulation in the district court with regard to further proceedings on the permanent injunction? Yes, Your Honor. Is there no further questions? Thank you very much, sir. Thank you. Thank you. Good to have you. Mr. Starcher. Thank you, Your Honor. Just four short points, two on standing, two on the Privacy Act merits. So starting with Gary, I do just want to highlight that the parts... Let me ask you something. Is this case going to be mooted? By? By Doge finishing his work? I said there's a reference to four to six weeks is all it's going to take. If they finish their work, would that moot this litigation? I mean, are we wasting time here? No, no, certainly not. I mean, I guess conceivably at some point, you know, the work could be finished, but I think as representative... We're wasting time for that reason. We may be wasting time for some other reason. I think as representative in the government's briefs, Doge needs this access to do its work. And so the work is not going to be completed, or certainly not all of the tasks that these individuals... I've read the newspaper that the Doge guy who runs it has quit. So I don't... So the individuals who are... Musk, Mr. Musk. Right. So the individuals who are subject of this injunction have not quit. I think some of our SGEs whose time might be coming up soon, I think it's 130 days, so we still have a little bit. But the executive order refers to, I can't remember how many months, but it puts the sort of conclusion of the Doge work at July 2026. So we still have a long time until the sort of modernization that is contemplated... The plaintiffs haven't alleged mootness, and there's been no finding in that regard. In fact, it hasn't come up. Sorry? So there's been no allegation that it's moot. There's been no finding that it's moot.  It's simply not been raised in the district court or here. That's right. And that's right. That's another basis. I agree with that. I would agree 100% with what Judge Aziz said. I'm asking you for your... Yeah, I don't see that this would be... I'm referring to that four to six weeks that's in the record here. Right. And I would... And I'll burn the page if you want. I think it's page 16 or something like that. That's okay. Again, I think the executive order... The first two on page 16 of the district court opinion. I don't have the... I can look at it. But the executive order that's the basis of all of this makes clear that this effort goes on until July of 2026, I think is when the timing ends. And again, as we've represented, a lot of this work is held up or was held up precisely because this access had been interrupted. But just... I want to ask a question that was sort of asked to opposing counsel with regard to the pending appeal in the Supreme Court that relates to the social security administrations also from this court. Of course, the Supreme Court may just say, we're not going to take it up. But they could also say, we're granting a stay in this case, pending further appeal, or they could deny it. And if they either granted it or denied it, what effect would that have on the termination in this case? Sure. So no direct binding precedential effect. But I think particularly if the court were to grant the stay in that case, I think that would strongly indicate that this panel and the merits of the PI should rule in our favor for the following reason. We are the applicants. Wouldn't that depend on whether... If they explained themselves? I mean, one of the challenges that we get there, they deny it, they may deny it because they don't think it's cert worthy. If they grant it, absent an explanation, it's hard for us to know exactly what it means. If they give us an explanation, if they said, for example, there's no standing in that case, well, that would obviously inform a great deal. But it seems like to me, it would depend a great deal on what was done and to what degree there was an explanation provided. I guess I agree to some extent. I think if the court grants the application, we as the government bear the burden of showing our entitlement to the extraordinary relief of a pending appeal. That means that in front of the Supreme Court, we have the burden of showing our likelihood of success and the balancing of the equities in our favor. So if the court grants us our stay, the Supreme Court, I should say, grants the stay, they must have found that we showed to a high degree of certainty that we were likely to succeed on the merits of the arguments that we're making in the Supreme Court. And if you look at the Supreme Court filing, the standing final agency action, all of the arguments match really almost identical to the arguments we're making here. And so I don't see how if they grant the stay... But neither you or opposing counsel are asking us to hold this case in advance. No, and I see my time is up, but... You answered questions. Yeah, no, no, no. We think that you can resolve this case based on the precedent of this court and others, and we don't expect, you know, we feel confident that the Supreme Court will agree with us, but we don't think you need to wait for them. Can I ask, with the judge's indulgence, you said you had four points. Can you make them quickly so I can just understand what you were responding? We didn't give you much of a chance to talk, but what are the four points that you're trying to... I can go really quickly. The first was the part of the Gary decision that we were discussing earlier was from a portion of that opinion, finding that there was no standing to seek an injunction in that case. This is a case exclusively about an injunction, no damages, so that's sort of a strange place to put reliance. I'll skip over two in the interest of time. On the Privacy Act, just two quick points. You know, just at Treasury alone, I asked them, hundreds of employees have access to these systems. Prior to this, these are not DOJ people. These are just employees of Treasury who have access to these systems for lots of reasons. The implication of this case is that suddenly every single one of those decisions is subject to some sort of specific need-to-know judicial supervision that's never happened before and we think is not consistent with the Privacy Act. And then finally, to your hypothetical of the sort of library hypothetical you were giving, you know, we don't rely on the declarations submitted to the district court because those aren't in the administrative record, but I would just direct you, if you're interested, to the Krause declaration, which at number 27.1 is discussing the need-to-know in Treasury and it looks a lot like what he's describing is a lot like that hypothetical of we need to know what we don't know to figure out how to modernize these systems, which is pretty broad. Can I ask one more? We gave his colleague a few minutes. I take the government here has not challenged the preliminary injunction bond. It was set at $10,000. I'm not sure how that relates to the costs or damages that would result, but you haven't raised it, so I'm not trying to. The question I have is do you think that that amount, which seems low given the things that are at stake here, that that low injunction bond affects the irreparable harm discussion that we should be having? No, I haven't thought through this. My initial reaction is it might have at this stage of these proceedings where we, the government, were seeking a stay and therefore we boarded. Under McKeon, it might affect it. But now we're looking at, you know, the district court's conclusions about the plaintiff's showing of irreparable harm. Why would it be at the back end of winter, which is sort of the balance of equities, when we're looking at the government's harm and we're weighing that as against the plaintiff's potential harm, that when we're doing that balancing or that weighing at three and four, sort of together here, that we would consider the sort of paltry sum that was issued as an conclusion that that amount was sufficient suggests that the harms the government suffers here are not high? Correct. And that if, in fact, it turns out that the court is wrong, that the government is unlikely to be fully compensated based on the small bond amount. Sure. I mean, we haven't made that argument. And as you know, we haven't sort of challenged. I know we asked, I believe we asked for significantly more probably in district court. I don't have the number in front of me. But I certainly agree that, you know, as other cases have recognized, the government is sort of in a position where when it is enjoined from doing things that are legal, it suffers unique and difficult to recompense harms for every sort of day that it's that it's enjoined from executing otherwise lawful conduct. So thank you. Thank you. Thank you, Mr. Starcher. One of our traditions here in the Fourth Circuit is at the conclusion of each argument, the judges leave the bench and come down the well of the court and recounsel. And we will do that. Madam Turk, you may adjourn court, sign a die and we will go down and recount. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, G. Steven Agee, Julius N. Richardson